Our next case is TRADING TECH INTL v. ESPEED MR. ROSEN Good morning, Your Honors. The sua sponte post-appeal amendment of the final judgment was an erroneous use of Rule 60 under Seventh Circuit law, and even if procedurally proper, the royalty awarded, though it may have reflected T.T.'s subjective valuation of its invention, defied objective economic evidence of what the market would pay for it. On the Rule 60 issue, we think, and we are in Seventh Circuit law... MR. ROSEN And the Seventh Circuit law allows an awful lot of leeway, doesn't it? MR. ROSEN Your Honor, I think, in fact, if you look at the HyperQuest, Herzog, and Lorenzen cases which we cite, all of which found that a change to the remedial provisions of a judgment were Rule 59 issues rather than Rule 60 issues. Your Honor, T.T. suggests that those decisions can be explained as basically cutting an appellant a break who otherwise would be a time barred. I don't think the Seventh Circuit was being that result-oriented in those decisions. I do think, though, the Seventh Circuit looks, Your Honor, at the policy behind those finality rules and those rules governing changes to final judgments, and in particular, the policy against piecemeal appeals. MR. ROSEN You knew that you were subject to damages, didn't you, all the way through, without a question? MR. ROSEN There was no question, Your Honor. There had been a jury verdict, there had been a remediator, and although not made a record... MR. ROSEN And on June 20th, you go through an explanation that no supercedious bond is necessary, etc. MR. ROSEN That's correct, Your Honor. MR. ROSEN So you know that money's at stake, and any failure to mention that was simply  MR. ROSEN Your Honor, at that point, we don't know whether it's an oversight or a deliberate deliberate... MR. ROSEN Well... MR. ROSEN ...on the judge's part... MR. ROSEN ...anything otherwise. If you're acknowledging it, it's against you, what's left to be determined here? MR. ROSEN Let me address the bond motion, and then I think there's a second question there. With respect to the bond motion, which is filed on June 20th, there was in fact an expectation on our part that a money judgment was going to be entered imminently, and that it would be non-pro-tunk to May 22nd. Either, we believed either, TT would agree with our position, or at least determine if they disagreed, it would be the prudent thing to do, to go back to the judge and have the judgment amended at that point. So we expected, and I suppose in the final analysis, we expected this court might suggest a remand to get the judgment encapsulating the damages. So we certainly expected, when we filed the bond motion, that there would be a money judgment, and the reality of judgment execution practice... We're going to pay. Why then don't you? MR. ROSEN The representation we made, Your Honor, was that we would pay, and it's still our representation, and it's been encapsulated in a stipulation now. We will pay, without any execution proceedings, the final unappealable money judgment. We believe we're still not at that step where there's a final unappealable money judgment. And that was our representation then, it's our representation now. And TT has never suggested that that motion... JUDGE LEBEN Did you say... I mean, where is this notion that there's a future judgment yet to come? Have you ever said that? Did you say that when you were here on the earlier appeal that Judge Lurie and I heard? MR. ROSEN We raised that issue on a motion to dismiss. TT appealed from a series of motions in May of 2008. We filed a motion to dismiss. TT went back to the district court and asked for an amendment to the judgment. JUDGE LEBEN The motion to dismiss was denied. MR. ROSEN That's correct, Your Honor. At a later date, the motion to dismiss was denied. And TT's position, really the gist of their position, is that by finding that the motion was final, that somehow made it a money judgment. And I think we all know what a money judgment looks like. We all know the consequences of entering a money judgment. It creates liens, it creates priorities, it creates constructive notice. We had none of that here. JUDGE LEBEN In some places, in some circuits, I don't have any doubt that the Court of Appeals would have looked at what the district court judge said. You can't do that. But it sure looks like the Seventh Circuit says the district court judge can. MR. ROSEN Well, Your Honor, I would respectfully disagree. And I think the Seventh Circuit has been particularly vigilant on this issue of having the judgment state the relief that the prevailing party is entitled to. The Seventh Circuit has said this is not a technicality. I think the language was it's not a niggling little technicality, it's not a technicality at all. JUDGE LEBEN One of the cases I read, and I'm not going to state my name because I don't remember case names that well, but one of the cases said, look, we know what you guys are doing in the Northern District and we want you to pay more attention, but nevertheless, under our law, you can do it. MR. ROSEN Your Honor, I think the case you may be referring to might be Talley, which is the case, as I've just mentioned, I'm referring to holding. In Talley, there was no issue, there hadn't been an amendment, there was no issue in front of the court of amendment, the court didn't mention Rule 59 or Rule 60, the court did say if this plaintiff is going to have trouble collecting indicta, it is our hope that the court will help them. JUDGE LEBEN I remember that one. MR. ROSEN So, Your Honor, certainly we discussed that case in our brief, but I think that is what Secretary Dicta and the other cases are holding by the Second Circuit, where they actually had in front of them an amendment and needed to decide which rule it came under. JUDGE LEBEN But I'm still struggling to understand why you didn't, why everything wasn't clear, that there had been a remitter, the amount of damages had been readjusted, everybody was well aware of the implications, why haven't you paid yet? MR. ROSEN We felt we did what was appropriate, which was to raise before this court, where the appeal was already pending, our belief that the judgment was ineffective. And in that case, we were arguing it was not final. We lost that issue. But nonetheless, the decision of the motion panel here did not find that this is a money judgment. It did not say what the implications were of the fact that it did not recite any damages. My reading of the motion panel's opinion, which is fairly short, is that the situation before this court was, you certainly had a clear statement from the district judge that he believed it was final. No question about that. JUDGE LEBEN And we said so too. MR. ROSEN Yes. And you also had the party that would putatively be benefiting from the damages saying, we have everything we need. We were the only ones saying, and they were dismissing our argument in four pages of their brief as a mere technicality. So I think, Your Honor, we did what was appropriate. We felt there was a defect. We raised it before the court, which already had jurisdiction over it. It was TT, which was in a race to the courthouse to be the appellant on those cross appeals under Rule 28.1, that said, no, this is a technicality. Don't make us spin our wheels. And that's how we got to where we are today. And that's why I think there's no equity. Whereas in the Talley case, there may have been some equity in favor of the plaintiff. I don't think the equity here… The district court judge did decide that it was a permissible amendment. But the district court judge also said that he found it inexplicable that TT had not acted to protect… JUDGE LEBEN That was the magistrate, wasn't it? MR. ROSEN And the district court judge adopted the magistrate's opinion in total, except for one other point unrelated to that. But that was their view, that TT should have done more to protect its interests at the time and didn't do it. It was inexplicable. But nonetheless, they found it under Talley, a Rule 60 case. JUDGE LEBEN You're taking us back to 100 years ago, to the era of notice pleading, or before notice pleading, and when a party would file a writ of serifascius or verifascius and say, you haven't crossed that T. MR. ROSEN No, I'm not trying to go back to the forms of action or that type of formality, Your Honor. And again, the Seventh Circuit has been very clear. There's not a lot required of a final judgment. But what the Seventh Circuit has said repeatedly is the relief the prevailing party is entitled to must be set forth there, and particularly with respect to a money judgment, Your Honor. That's terribly important because that gives notice to third parties. It tells people you may be subordinated to a judgment. JUDGE LEBEN Mr. Rosen, if we find against you, what is your argument against some form of sanctions? MR. ROSEN Basically, for the same reasons the district court rejected that, Your Honor. Because the gist of these sanctions, as well as on the merits, is the idea that it's ridiculous to argue that a judgment which makes no mention of money is not a money judgment. And the district court and the magistrate judge rejected that. They recognized there was a critical element missing from that judgment, and that that was a result of T.T.'s failure to protect its interests. We were the ones who were waving the red flag on this, and they basically chose to judge it. JUDGE LEBEN Well, you mentioned it. I'll concede that. But I didn't see a red flag waving. MR. ROSEN Well, Your Honor, it's not only the basis for the – keeping in mind with respect to the motion to dismiss, it was originally filed before that June judgment. We then filed a reply brief raising this issue. And we raised that again in the red brief on the appeal in the jurisdiction section, that we still believed there was a problem here. And I really believe that's for the party who would benefit from the judgment to simply keep dismissing that as a technicality. That's how we got to where we are here. And I'd like, if I can, to spend a little time on the remitter issue. As I said, we had a reasonable royalty that supposedly resulted from a Georgia-Pacific type analysis awarded here. And there was a great deal, and it's recited in the red brief here, a great deal of evidence that there are traitors who love this invention, who swear by this invention, who feel they've been successful because of this invention. But there was also basically undisputed objective evidence that the market would not pay the uncapped per-transaction royalty, which this damages award was based on. I would like to reserve my rebuttal time. Thank you. Welcome to you. Thank you. Mr. Sigman? Good morning, Your Honors. The one thing I'd like to point out, in case I don't get to it later, is I find it awfully strange that everyone wasn't clear on what TT was doing back during the 08 appeal. It's important, I think, to look at the last notice of appeal that we filed, which is at A33673, which specifically enumerates the remitter order. We were here before, and there were a whole bunch of issues argued on both sides of the case. Sometimes parties have to pick and choose what arguments can fit within what they want to appeal. And although that didn't get into our briefs and didn't get appealed, I think that it is crystal clear that that damages issue was part of the 2008 appeal. The real crux of E-Speed's argument is based on a fundamentally flawed premise, and that is that somehow the issue of damages wasn't fair game in the 2008 appeal. I think that's just plain wrong. I think this court took jurisdiction over 1295A, and we all know there's two paths to this court in a patent case. There's interlocutory under 1292, and then there's final judgment under 1295A. To kind of listen to what E-Speed's saying, I guess you could have a final judgment that didn't mention the damages number, so therefore it's some kind of 1295A decision that later can be appealed if the court ever corrects it. I mean, I really don't know where it leads. It just seems like it leads to an impossible result. But again, E-Speed's somehow arguing that even though this court accepted 1295A jurisdiction in 2008, because the damages number wasn't on the final judgment form, it wasn't fair game for the 2008 appeal. And they argue this even though there's absolutely no dispute as to what the damages number was. I mean, it's right in Judge Moran's remitter order, and it's in the letter we sent to the court accepting the remitter. They admit on page 7, footnote 3 of their great brief, that the issue of damages was resolved in 08. Mr. Singleton, I disagree with Mr. Rosen about the Seventh Circuit Law, having read it. But I looked at other circuits, too, and I practiced in the Ninth. And, man, if it was in any other circuit, I think he had a pretty darn strong argument. When I read what the magistrate had to say, I agreed with what the magistrate said. How on earth did you miss having a proper judgment? I think what happened, and now I'm speculating a little bit, but we were fighting whether or not there was a final judgment in this court in 2008. And when this court took 1295A jurisdiction, we basically thought that we had what we needed. We had a final money judgment. If you look at the transcript of the day we went into court with Judge Moran, we had actually prepared a final judgment with a bunch of things in it. And if you knew Judge Moran, I think Eastmead had some objection that I don't think was ever articulated about why our final judgment form was not right. And the judge kind of, I think, spoke with his clerk and said, well, there's a form that they use at the district clerk's office, or at the clerk's office. Yeah, and he said, that's not my business. Yeah, he said, that's not my business, and he's not bureaucratic. I mean, if you knew Judge Moran, who's no longer with us, I mean, he was a very practically minded judge. And actually, I think that if you look at the case law in the Seventh Circuit, or maybe I don't even need to tell you, it is just that liberal. Even the cases that Eastmead cites, I think, if you really read them, a lot of them speak to our issue. If you look at this health cost case, the one that has the niggling technicality language, in the end, they accept the appeal, and they basically say it's all okay. So, I really don't think there's a question that under the Seventh Circuit, you know, this is okay. And I don't think there's any question at all that this shouldn't be Seventh Circuit law. You know, hindsight being 20-20, do I wish that I didn't have to come here again, and we had done something to change that form? Absolutely, I wish that. I mean, this isn't free. It's not easy to get here. Is this a jurisdictional question or a waiver question? Well, I think it's a jurisdictional question, Your Honor, because... But you started by arguing waiver to us, right? Yeah, I think they're very, very interlocked. And I guess in the end, it probably doesn't matter whether it's waiver or jurisdictional for us as a final end result. But I do think it's a jurisdictional issue. Because I think that if you look at the 1295A jurisdictions this Court took, since damages was fair game on appeal, any appeal from the Rule 60 correction really has no effect. They're really just trying to reopen the same thing they could have appealed back in the 2008 appeal. But it's a little hard to say not putting the damages number in as clerical, isn't it? That's a pretty big clerical error. Well, I think when you look at the Seventh Circuit precedent, and you really kind of delve into what's required in the Seventh Circuit, it's not that big of a clerical error. I mean, it is that I have to concede, since we're all here now and doing this, I guess it does turn out to be a pretty big clerical error. But you have to remember, we're in a situation where they move for a bond. They move to not have a bond. They move to stay execution of the judgment. Judge Moran, in his decision, when he granted that, talks about the judgment. They said, don't worry, we'll pay. And I know maybe they had some language in there that somehow kind of now they can wiggle around saying they're paying. But the bottom line is, when you go to court, you take people at face value. And you believe when they say they're going to pay, they're going to pay. This is a case where it's just so clear. No one's arguing what the damages number was, what pre-judge. I mean, it kind of baffles me. And, Judge Wallach, I do grant you that maybe in other jurisdictions, there should have been a little bit more strict adherence to what's on the four corners of the form. Maybe in one of those jurisdictions we would have, you know, it would have been corrected anyway, because the judges would have been more in tune. I don't know. But I just know in this jurisdiction, excuse me, what happened is just okay. So, yeah, I believe it's both a jurisdictional question and a waiver question. And, again, I don't think you can, I mean, this was argued in 08. In 08, when they filed their reply to try to get the 08 appeal dismissed, we said, I mean, we basically had this whole argument about, well, you know, they say because it's not on the form that it's, you know, that it's not a valid final judgment. And the court took 1295A jurisdiction anyway. So I guess, you know, part of me says, why shouldn't we be entitled to rely on that, that the court took 1295A jurisdiction? You know, and, again, even if we're in a situation where you really do want to look at the 6CA amendment, I believe that, you know, all the cases that we cite and a lot of cases they cite really show the Seventh Circuit feeling that this is truly a Rule 60 and not a Rule 59. I mean, if you look at the intent of the judge, it's just crystal clear that he meant there to be a final judgment with damages included. And although the number wasn't, I mean, there's cases in the Seventh Circuit where, you know, they leave the damages number out, and I think the Talley case is a really good example of that. You know, you asked about the frivolousness. I do want to say that, again, I believe they're relitigating the same thing that they did in their motion to dismiss on the 08 appeal. It really, I really don't think we should have to be here again. I think it's fundamentally unfair. That means maybe you win. That doesn't mean it was frivolous to argue that a judgment that didn't state the damages amount was clearer. You know, Your Honor, I think, I understand the serious nature of saying an appeal is frivolous. It's not something that's too likely, but if you look at the state industries case, and you look at what I think, I think that there's appellate arguments being brought here that were basically dead on inception. I really don't think any reasonable, objective person would believe that the 2008, that in 2008, in that appeal, damages were not fair game. I mean, this court decided willfulness, which I know Eastbeat has an argument about why that goes to the merits of the preliminary injunction, but, you know, there's a lot of issues that were argued in that 2008 appeal, and I think that anyone who was worried about damages would have obviously argued them. So, you know, we don't make that motion lightly, but I really, again, this is a case where they said they would pay. We kind of relied on them paying, and we're back here again. I don't know if Your Honors want me to talk about the damages issue, but just big picture, if you get to that issue, I submit that you never should. I think that the characterization of our damages case and the fact that they're, you know… Well, you're standing by that remitted number. I'm sorry. You're standing by the remitted number, right? Yes, Your Honor. Yeah, we're not… We don't think, you know, I think if I would have somehow cross appealed, I'd be, you know, but we didn't like that remitted number, but that's something we agreed to, and frankly, if we're going to open up all the issues, I'd like to re-argue that right now, but I'm not going to test the court's patience. But, yeah, we agreed to the remitted number, and if you look at Judge Moran's opinion, he said, you know, that he looked at all the evidence. This was a lengthy trial. I don't think there's many patent trials like this nowadays. It was a four-week, arguably five-week trial if you talk about deliberations, and in that case, you know, Judge Moran looked at all the substantial evidence we put in. I think that our brief goes through all the reasons why the reasonable royalty analysis wasn't speculative, why it doesn't meet, you know, doesn't do any of the things that, you know, this court's cautioned against in the past. It was basically, a lot of it was based on TT's existing royalties for those patents. So, again, the reasonable royalty analysis took into account the value of TT's invention, TT's licensing, Eastmead kind of focuses on software licensing as opposed to patent licensing. One thing they don't mention is that, you know, there was testimony that TT gets a lot of value out of licensing its software and kind of getting a customer base. But it's all in our briefs, and I really feel like we covered the damages issue well. Part of me says, again, we shouldn't have even really had to deal with damages, but so be it. Again, on sanctions, you know, this case, I think when we filed this case, my oldest daughter was getting ready to start kindergarten or first grade, and she's getting ready to go to high school now. This case has been around since 2008. I really believe the second trip up to visit, although I like visiting, but the second trip up here was really unnecessary and really nothing more than frivolous, and I'm begging that the court award TT its fees and costs or whatever other sanction you think is appropriate. If there's no other questions, I'll yield. Thank you, Mr. Chairman. Two and a half minutes. My friend didn't mention that before the appeal was decided, the first time around, TT had already sued my client again, so there probably will be additional visits, regardless of what happens today. Chief Judge Rader, you asked whether it was jurisdiction or waiver that's at stake here. I think it's clearly, if anything, an issue about waiver, which means that the court, in any event, even if it determined that these issues could have been raised, it would have discretion to consider them now, in light of the confusion caused by TT not pausing to get their judgment corrected at the time. All of these points go to what is within the scope of an appeal. What are the proper issues that can be raised? It's not because an issue is mentioned in a superfluous listing of interlocutory orders in a notice of appeal. What determines the scope of the appeal is the judgment. Mr. Rosen, you noticed that there was a number missing, and you mentioned it in passing to the court. I'm sorry? You mentioned it in passing. I found a sentence where you said something about, we take an opposing position, Your Honor, something along those lines, in the discussion with the court, right? Before this court? No, before the district court. The only thing that was still before the district court, once we were already up here arguing the motion to dismiss, was the bond motion. We had already argued... When the judge had that hearing and said he was going to correct the number, you had a discussion where you said, well, we object to that, Judge, something along those lines. The counsel who was present, the issue at that time was we had argued that the permanent injunction was not a final order. The judge indicated it was my intent that that was going to be a final order, and although I don't get excited about this kind of stuff, we're going to take care of that now. T.T. had introduced a formal order which did recite the numbers. At that point, Judge Moran wasn't taking much input from us. The objection, consistent with the position we took throughout, Your Honor, was that it wasn't apportioned between the parties. There was never any objection. We were never trying to prevent a money judgment from being entered. To the contrary, we were arguing that that needed to be done in order to perfect the appeal. Where is that in writing, in the record? Did you write a letter to opposing counsel or bring it to the notice of the court in writing? Would that be good practice? Your Honor, we felt there was a jurisdictional defect on the appeal. We felt it is the duty of either party to note a jurisdictional defect and bring it to the attention of this court. We felt that was the appropriate form to do it. We did that. T.T. saw that argument and spent four pages of their reply, sir reply. They had a special sir reply brief, which is in the appendix. Let me give you this page number. Why didn't you write a letter to opposing counsel saying, hey, you're missing a number in this thing? We had many conversations, Your Honor. Their view was that that was a technicality that would be spinning our wheels if we went back to Judge Moran again. You have to keep in mind, Your Honor, they viewed themselves as the aggrieved party. They viewed themselves as the party who had the most to gain from an appeal, and they raced us to the courthouse. They filed a midnight notice of appeal to get the status under Rule 28.1 as the appellate, which gets you the first brief and some extra pages of briefing and so forth. That was... And all this cross appeal. And it's also important to keep in mind, Your Honor, they felt that that damages number was grossly inadequate. They were coming here. They were looking to get the whole thing vacated to go back to get a much bigger damages number. And as is often the case, Your Honor, I think both sides overestimated their chances on appeal. Neither side thought that the eventual outcome would be what it turned out to be, which was an affirmance across the board. And if the outcome had been anything but an affirmance across the board, this mistake by T.T. would have come out in the wash because we either would have been found not liable or we would have been back litigating over more damages. So you have to a little bit keep in mind the mind frame of the parties at the time. If there are no other questions, I thank the court. Thank you, Mr. Rosen.